## P. H. GREENWOOD V. THE STATE.

35    587
36a  361
36a  362
36a  364
37a  577
38a  100|

1. The district court cannot, in every criminal case, be expected to give in charge to the jury every principle of law which might have application to the facts. Unless requested, therefore, to give a particular instruction to the jury, the omission to do so is not error.

2. Indictment for assault with intent to murder, charged that the accused unlawfully and feloniously made an assault upon one H., and that the accused, "a certain pistol, then and there charged and loaded with gunpowder and divers leaden bullets, in his right hand then and there had and held at, to, against, and upon him, the said H., and then and there did attempt to shoot the said H., with the unlawful intent," etc. *Held*, that these allegations charge that the assault was coupled with an ability to commit the offense.

3. On the second trial of the accused upon this indictment for assault with intent to murder one H., the State was permitted to show that H. had died since the previous trial, and then to prove by a witness the testimony borne by H. as a State's witness upon the previous trial. *Held*, that although there are many authorities against the competency of such evidence in criminal cases, yet the great preponderance of judicial decisions, in both England and America, now concurs with the better reasoning in holding that such evidence is competent and admissible as well in criminal as in civil causes. *And held further*, that it is not necessary to prove the precise language used by the deceased witness in his testimony; the substance of his entire testimony is sufficient, and may be stated in different language than that employed by him. (See the opinion for a brief review of the authorities on this important question.)

4. The object of all evidence is to elicit the truth, in order that the court and jury may be enabled to administer strict and impartial justice; and this end necessitates the admission of evidence to prove what a deceased witness testified at a former trial, when confronted with the

court, a jury, and the parties, and subject to a cross-examination. Therefore the ruling now made, establishing the competency of such evidence, is believed to be one of humanity as well as justice, and to be especially conducive to the protection of defendants in criminal cases, whose lives or liberty often depend upon the knowledge of a single witness.

5. Repeated decisions of this court have already established the right of counsel for the State to cross-examine the wife of the accused upon the statements made by her in her examination-in-chief as a witness for her husband.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

The opinion of the court indicates the character of this case, and discloses such facts as are relevant to the rulings.

*J. H. Jones* and *D. Field*, for the appellant.—The indictment in this case is clearly bad, because it does not charge that appellant had the ability to commit a battery; and as it is not alleged in the indictment that appellant did commit a battery, it became necessary to allege that he attempted to commit a battery, and had the ability to commit a battery, and this the indictment fails to charge. (See Paschal's Digest, Article 2137.) And this being a substantial defect, could not be cured by proof. The motion to arrest the judgment should have been sustained, and the indictment quashed.

The fourth error involves the ruling of the court in admitting the testimony of James Hampton, deceased, who testified on a former trial of this case, and who died before this trial. The State offered to prove what James Hampton testified in this case, on a former trial, which was objected to by appellant, because it was hearsay, because it was illegal, and because the appellant must be confronted by the witness. The evidence is certainly hearsay, and is not involved in either of the

exceptions which are allowable as evidence at common law or our statute.

It is illegal, because it is in point-blank violation of the Constitution of the State of Texas (see Paschal's Digest, Article 2472), and in violation of Article 2490, Paschal's Digest, which gives the rule and the exception to it. The appellant was not confronted by the witness, James Hampton. James Hampton was dead, and spoke through another, who could not feel any of the embarrassment, and who could not exhibit the feelings of James Hampton, if Hampton were swearing falsely in the presence of the accused. The jury are not restricted to the utterances of the witness, but they may consider his manner of testifying, and the state of feeling exhibited by the witness toward the accused, in estimating his evidence and determining its weight. Again, if James Hampton did swear falsely on the first trial, he might, had he lived, have repented and testified truthfully on the second trial, and have acquitted the appellant. Again, the witness Lasseter gave the substance of James Hampton's evidence as he recollected it. May he not have erred in his recollection of Hampton's evidence? Again, Lasseter may have expressed his recollection of Hampton's evidence in a manner to make it more direct and convincing than it was when uttered by Hampton. The authorities admonish us that such testimony should be received with great caution in civil cases. And we submit that it should not be received at all in criminal cases, according to the authority and for the reasons above referred to and stated.

*William Alexander, Attorney General*, for the State.

OGDEN, J.—The defendant was indicted and convicted of an assault upon one James Hampton with intent to

kill and murder. The charge of the court upon the trial of the case was, so far as it went, a correct enunciation of the law applicable to the facts of the case. It cannot be expected that a court, in every criminal case, will or should give in charge to the jury every principle of law which might be applied to the facts of the particular case, and the omission to give a particular charge is not such an error as would require a reversal of the judgment, unless the court, upon being asked by a party to give certain charges, has refused to do so. (O'Connel v. The State, 18 Texas, 363.)

The objections raised to the indictment were correctly overruled by the court, especially the exception that the indictment does not charge the assault to have been coupled with ability to commit a battery. The indictment does charge that the defendant did willfully and maliciously attempt to shoot, kill and murder the said James Hampton. We think the indictment charges an assault sufficiently definite, and it was a question of fact whether the charge should be sustained or not.

There is, however, a more serious question presented by counsel for appellant in the fourth assignment, which is as follows: "The court erred in admitting the testimony of James Hampton, deceased, given on a former trial, over the objections of defendant." There appears to have been a former trial in this case, and that James Hampton then appeared in court, and was sworn and testified in the case; but that between the first and last trial he had died, and the counsel for the State was permitted, on the latter trial, to prove by another person what Hampton had testified to on the first trial.

The question presented in this assignment has been the subject of much legal discussion and the foundation for many and varied judicial decisions. The authori-

ties generally agree that in civil causes the testimony of a deceased witness, given in open court, under oath, may be proven by another person who heard that testimony given upon the former trial of the same cause, between the same parties (1 Phillips on Ev., 389); but there are many authorities which deny the application of that rule to criminal cases. Among the earlier decisions denying the application of the rule to criminal cases is Sir John Fenwick's case, reported in 5 Hargrave's State Trials, 62, and which has been followed in The State v. Atkins, 1 Tenn., 229; Finn v. The Commonwealth, 5 Randolph, 701; Brogy v. The Commonwealth, 10 Grattan, 722. But it is believed that there is now in England and America a very large preponderance of authorities agreeing in the rule that the death of a witness will let in testimony in civil or criminal cases to prove what he swore to on a former trial. (1 Phillips on Ev., 389; 1 Greenleaf on Ev., 189; Cornell v. Green, 10 Serg. & Rawle, 14; Mayor v. Day, 3 Taunt., 261; State v. Hooker, 17 Vt. R., 659; U. S. v. Macomb, 5 McLean, 287; The Commonweath v. Richards, 18 Pick., 434; Kendrick v. The State, 10 Humphreys, 484.)

In the case of the United States v. Macomb, Judge Drummond, in delivering the opinion of the court, assumes the rule in civil causes as no longer an open question, and then argues with great force, and so decides, that there should be and really was no difference in the application of the rule to civil or criminal cases, and cites United States v. Wood, 3 Washington C. C., 440; King v. Joliffe, 4. Term R., 290, and others. But by far the ablest opinion we have had the pleasure of reading on the question before us, is in the case of Kendrick v. The State, in which Justice Totten seems to have reviewed all the arguments and authority on the

subject. There is also a case in 5 Ohio State Reports, 325, Summons v. The State, in which Chief Justice Bartley, delivering the opinion of the court, has exhausted all the learning on these interesting and important questions, and in which the court declare substantially as in Kendrick v. The State. And in following the decisions in those two cases, we are of the opinion that evidence of the character in question is legally competent, and should be permitted to go to the jury in criminal as well as civil cases.

The object of all evidence is to elicit the truth, in order that the judgment of the court and jury may be informed, that they may in all cases administer strict and impartial justice. It would seem that such a rule should be adopted by our courts, if for no other reason than to protect the rights and interests of the defendants. It is not unfrequently the case that the life or personal liberty of an accused person is dependent upon the knowledge of one individual, and if by accident or otherwise that person should die, the innocent would be left to suffer without remedy, unless the rule of Ohio and Tennessee be fully enforced. We are fully convinced that the rule herein recognized is a rule of humanity as well as of justice.

It is claimed for the defendant in this case, that if the testimony of the deceased witness be permitted to go to the jury at all, then the proof of that testimony should be confined to the exact words of the deceased; that the defendant, by the adoption of such a practice, is deprived of the right of cross-examination, and of confronting the witness face to face, and therefore the proof should be confined to the precise language of the deceased witness. But it should be remembered that, if such a rigid rule were adopted, it would, in nearly every case, completely destroy or render nugatory the rule, as

there would not be one case in a hundred where any one witness could possibly give the exact language of a person who had testified perhaps months before. It should also be remembered that, in every case where this practice is sought to be enforced, there has been a full opportunity to meet the witness, whose testimony is to be rehearsed to a jury, face to face, and with every privilege of having him sworn and cross-questioned. The decisions of the courts on these questions have been singularly inharmonious, and about as conflicting as they could well be. But we are of the opinion the cases of United States v. Macomb; dissenting opinion in Warren v. Nichols, (6 Metcalf, 269); Cornell v. Green, 10 Serg. & Rawle, 14; Mayers v. Dickey, 17 Ohio, 439; 1 Cowen & Hill's Notes to Phillips' Ev., 390, and Kendrick v. The State, and a few others of equal standing, have finally settled these questions into harmony; and that now it is not necessary to prove the precise language of the deceased witness, nor his language substantially, but his whole testimony substantially, though perhaps clothed in different language. We are unable to appreciate the objection of counsel, that this practice would be in direct conflict with Articles 2472 and 2490, Paschal's Digest, as he has had the privilege of confronting the witness before the court, and having him placed under oath, with a full privilege reserved to defendant of cross-examination. We are therefore of the opinion that the court did not err in permitting the witness Lasseter to prove the substance of the testimony of the deceased Hampton, given in court on a former trial.

The evidence adduced on the trial was conflicting and contradictory, but it was for the jury to reconcile that, if possible, and if not, then to give credence to the testimony of such of the witnesses as from their

38—XXXV

character and statements proved themselves worthy of being believed ; and the findings of the jury upon the evidence should not be disturbed if there is sufficient evidence to support the same.

There was error, however, in the ruling of the court in refusing to permit the State's attorney to cross-examine the wife of defendant in regard to her statements made on her examination-in-chief. She could not be put on the stand to testify against her husband, nor could she, when on a cross-examination, be questioned in regard to any facts against her husband which had not been drawn out on her examination-in-chief ; but that she may be cross-examined in regard to her statements already given, is not prohibited by law, but is demanded by every principle of justice. This question has been several times decided by this court within the last year. But as this error, if corrected, would not probably tend to a different judgment, we will not disturb the same on that account. We have been unable to discover any error in the rulings or judgment of the lower court to which the defendant could properly object, and the same is therefore affirmed.

AFFIRMED